CINCINNATI BAR ASSOCIATION *v.* WASHINGTON.

[Cite as *Cincinnati Bar Assn. v. Washington,*
109 Ohio St.3d 308, 2006-Ohio-2423.]

(No. 2005–2356—Submitted February 8, 2006—Decided May 31, 2006.)

Per Curiam.

{¶ 1} Respondent, David Samuel Washington Jr. of Cincinnati, Ohio, Attorney Registration No. 0055406, was admitted to the Ohio bar in 1991.

{¶ 2} On April 18, 2005, relator, Cincinnati Bar Association, filed a complaint charging respondent with professional misconduct. Respondent filed an answer to the complaint, and a panel of the Board of Commissioners on Grievances and Discipline held a hearing on the complaint in September 2005. The panel then prepared written findings of fact and conclusions of law, which the board adopted, as well as a recommendation, which the board modified.

Misconduct

{¶ 3} Respondent was a member of the law firm Rendigs, Fry, Kiely & Dennis, L.L.P., from 1991 until his resignation on September 14, 2004. Between January 2003 and July 2004, respondent billed multiple insurance-company clients of the firm more than $91,000 for work that he did not perform. On November 14, 2003, respondent accepted a $1,000 retainer for the firm from KGF Management and then converted the funds for his personal use. He did the same on February 10, 2004, with a $3,000 retainer from Deja Brew.

{¶ 4} Respondent acknowledged and the board found that respondent had thereby violated DR 1–102(A)(4) (prohibiting conduct involving fraud, deceit, dishonesty, or misrepresentation), 2–106(A) and (B) (prohibiting a lawyer from charging a clearly excessive or otherwise illegal fee), and 9–102(A) (requiring a lawyer to maintain client funds in a separate, identifiable bank account).

{¶ 5} The Rendigs firm has returned to its insurance-company clients the more than $91,000 that respondent had billed them for work not performed. The firm

also deducted $4,000 from respondent's capital account at the firm to reimburse the firm for the retainers that respondent converted to his own use.

## Sanction

{¶ 6} In recommending a sanction for this misconduct, the board considered the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). The aggravating factors cited by the board were respondent's dishonest or selfish motive and his pattern of misconduct over an 18–month period. BCGD Proc.Reg. 10(B)(1)(b) and (c). Mitigating factors included the absence of any prior disciplinary record, the payment of full restitution to all victims, respondent's full disclosure and cooperative attitude during the disciplinary process, and respondent's diagnosed cocaine and alcohol dependency, which the board found was a primary cause of respondent's misconduct. BCGD Proc.Reg. 10(B)(2)(a), (c), (d), and (g).

{¶ 7} Evidence presented to the panel indicated that respondent had used cocaine two or three times a week for two years until September 2004, when he entered a 30–day inpatient treatment program. After successfully completing that program, respondent continued to attend outpatient treatment programs, as well as Alcoholics Anonymous and Narcotics Anonymous meetings. Scott Mote, from the Ohio Lawyers Assistance Program ("OLAP"), testified at the disciplinary hearing that respondent had signed a four-year addiction-recovery contract with OLAP in 2004, and despite an initial relapse, had successfully completed the first 11 months of that contract at the time of the disciplinary hearing. Mote expressed confidence that respondent would complete his obligations under the OLAP contract, and a psychologist who had treated respondent offered his assessment that respondent would continue to be a valuable and productive member of his community.

{¶ 8} The panel recommended that respondent be suspended from the practice of law for one year with the entire suspension stayed on conditions. The board recommended, however, that respondent be suspended for one year with just six months stayed on conditions.

{¶ 9} We agree that respondent committed the misconduct described above, but we conclude that a longer suspension is warranted. His misconduct extended throughout 2003 and more than half of 2004. The strong personal and professional support system available to respondent, as well as his motivation to conquer his addictions, bodes well for a full recovery and a return to a competent and ethical legal practice, but a lengthier stayed suspension, together with supervision by a monitoring attorney, should ensure that respondent's misconduct will not recur. Our goal in this and other cases involving attorneys whose

misconduct was motivated by a drug or alcohol addiction is to tailor the sanction to assist and monitor the attorney's recovery. *Disciplinary Counsel v. Connor,* 105 Ohio St.3d 100, 2004-Ohio-6902, 822 N.E.2d 1235, ¶ 19.

{¶ 10} Accordingly, respondent is hereby suspended from the practice of law for two years, with 18 months stayed on the conditions that (1) respondent is supervised by a monitoring attorney during the stayed suspension, (2) respondent complies with the terms of his OLAP contract through October 2008, and (3) respondent commits no other misconduct. If respondent fails to meet these conditions, the stay shall be lifted, and respondent will serve the entire term as a period of actual suspension. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

---

Richard H. Johnson and James K. Rice, for relator.

James N. Perry, for respondent.