DAYTON BAR ASSOCIATION v. ROHRKASTE.

[Cite as *Dayton Bar Assn. v. Rohrkaste,*
111 Ohio St.3d 224, 2006-Ohio-5487.]

(No. 2006–0820—Submitted June 7, 2006—Decided November 8, 2006.)

**Per Curiam.**

{¶ 1} Respondent, William D. Rohrkaste of Dayton, Ohio, Attorney Registration No. 0031529, was admitted to the practice of law in Ohio in 1985. On June 13, 2005, relator, Dayton Bar Association, charged respondent with two violations of the Code of Professional Responsibility. A panel of the Board of Commissioners on Grievances and Discipline heard the cause, including the parties' comprehensive stipulations, and made findings of misconduct and a recommendation, which the board adopted.

## Misconduct

{¶ 2} Respondent is a criminal-defense lawyer who since 1990 has practiced on his own or in a small law firm. On August 26, 2004, respondent filed an appearance as counsel for Keion Baldwin, who had been indicted for felonious assault in Montgomery County Common Pleas Court.

{¶ 3} In early September 2004, respondent solicited a relative of Baldwin's for $100 for additional attorney fees. When they met, respondent was visibly impaired and under the influence of crack cocaine. Baldwin's relative paid respondent, and respondent later used the money to buy illegal drugs. Baldwin's

family reported their suspicions of respondent's illicit drug use to the court, and the court removed respondent from the case.

{¶ 4} The parties stipulated and the board found that respondent's conduct violated DR 1–102(A)(5) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice) and 1–102(A)(6) (prohibiting a lawyer from engaging in any other conduct that adversely reflects on the lawyer's fitness to practice law).

## Recommended Sanction

{¶ 5} In recommending a sanction for respondent's misconduct, the panel and board weighed the aggravating and mitigating factors of his case. See Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."), which allows consideration of any factor relevant to the severity of discipline, including those specified in BCGD Proc.Reg. 10(B)(1) and (2).

{¶ 6} In aggravation, the parties stipulated that respondent had used crack cocaine and abused alcohol since 2000. Respondent has been loosely affiliated since 2002 with the Ohio Lawyers Assistance Program ("OLAP"), and he has participated, with mixed results, in other treatment programs, including Narcotics Anonymous ("NA"). The parties agree that respondent has a history of entering long-term rehabilitation programs, making some progress in recovering from drug and alcohol dependency, and then dropping out of the programs.

{¶ 7} In November 2004, however, respondent stopped using crack and drinking alcohol. Respondent has since rededicated himself to recovery and entered various treatment programs, including a 12–step program to which he has a sustained commitment. Respondent's recovery has not been without incident, though, as even while abstaining, he was terminated from one treatment program for fighting.

{¶ 8} Relator did not charge respondent with a violation of DR 1–104 (requiring lawyers to maintain sufficient professional-liability insurance or to disclose to clients that they do not), but respondent admitted the aggravating effect of his failure to comply with this rule. Respondent reported that from mid–2004 until December 2005, he did not have malpractice insurance and had not told an estimated 80 percent of his clients. Respondent also acknowledged that he had not since 2001 been in compliance with the continuing-legal-education ("CLE") requirements of Gov.Bar R. X.

{¶ 9} Also in mitigation, the parties stipulated that on August 31, 2005, respondent agreed to an OLAP recovery contract having some terms more rigorous than in the standard contract. Respondent signed a five-year contract rather than the regular two-year term and committed to membership in Alcohol-

ics Anonymous ("AA") or NA, at least thrice-weekly attendance at AA or NA meetings, and a host of other terms to assist in his recovery. OLAP Executive Director Scott R. Mote testified that he was confident that respondent was not currently using alcohol or controlled substances. Mote also said that after his years of experience with respondent, he was certain that respondent would honestly report a relapse immediately. Moreover, Mote was confident in respondent's current competence and integrity, provided that he did not relapse, to practice law.

{¶ 10} Mote related that respondent was in substantial compliance with his OLAP contract and that Mote was happy with his progress. There were, however, small deficiencies. Respondent had on occasion failed (1) to timely document his AA and NA meeting attendance, (2) to check in with Mote by telephone at least once each week, and (3) to pay his $50 monthly administrative fee. During his testimony, respondent assured the hearing panel that he would improve his compliance with his OLAP contract in the future.

{¶ 11} Other evidence presented in mitigation included a letter from Judge Thomas M. Rose of the United States District Court for the Southern District of Ohio, commending respondent's competence and integrity. In another letter, Judge Jeffrey E. Froelich of the Montgomery County Common Pleas Court advised that he, Mote, and another judge had confronted respondent about his dependence. Judge Froelich wrote that now respondent "is at the point where he sincerely wants to do something about his addiction, and has the knowledge and tools to succeed." In his letter, local attorney Jimmie Christon extolled respondent's work ethic, compassion, and professional contributions to the Dayton community.

{¶ 12} Relator, encouraged by respondent's rededication to recovery, advocated a conditionally stayed two-year suspension to foster respondent's continued commitment. Respondent urged a conditionally stayed suspension of 18 months. The parties suggested essentially the same conditions for staying the suspension.

{¶ 13} The panel recommended a two-year stayed suspension, incorporating the parties' conditions. Adopting the panel's report, the board recommended a two-year suspension of respondent's license, with the suspension to be stayed on the conditions that respondent (1) successfully complete and strictly comply with all requirements of his August 31, 2005 OLAP contract, particularly his promised abstention from alcohol and illegal drugs, (2) comply with DR 1–104 during the stayed suspension period, (3) satisfy by June 1, 2006, any remaining outstanding CLE requirements and thereafter remain in compliance during the stayed suspension period, and (4) make a written report to relator every six months during the stayed suspension showing compliance with these conditions.

Review

{¶ 14} We adopt the findings that respondent violated DR 1–102(A)(5) and (6). We also agree that the recommended conditionally stayed suspension is appropriate.

{¶ 15} Respondent is therefore suspended from the practice of law in Ohio for two years; however, the suspension is stayed on the conditions that respondent (1) successfully complete and strictly comply with all requirements of his OLAP contract, entered into on August 31, 2005, particularly his promised abstention from alcohol and illegal drugs, (2) comply with DR 1–104 during the stayed suspension period, (3) satisfy within 60 days hereof any remaining outstanding CLE requirements and thereafter remain in compliance during the stayed suspension period, and (4) make a written report to relator every six months during the stayed suspension showing compliance with these conditions. If respondent fails to comply with the conditions of the stay, the stay will be lifted, and respondent shall serve the entire two-year suspension.

{¶ 16} Costs are taxed to respondent.

Judgment accordingly.

RESNICK, PFEIFER, LUNDBERG STRATTON, O'DONNELL and LANZINGER, JJ., concur.

MOYER, C.J., and O'CONNOR, J., dissent.

————

**MOYER, C.J., dissenting.**

{¶ 17} I respectfully dissent. We recently observed, "Our goal in this and other cases involving attorneys whose misconduct was motivated by a drug or alcohol addiction is to tailor the sanction to assist and monitor the attorney's recovery." *Cincinnati Bar Assn. v. Washington*, 109 Ohio St.3d 308, 2006-Ohio-2423, 847 N.E.2d 435, ¶ 9. Given respondent's history of drug and alcohol abuse, culminating with his removal from a case by a trial court, I believe the sanction should be more serious. A two-year suspension from the practice of law with 18 months of the suspension stayed on conditions would be more consistent with sanctions we have ordered in cases presenting similar conduct and allow respondent to focus his efforts on recovery.

{¶ 18} I would suspend respondent for 24 months, with 18 months stayed on the conditions required by the majority.

O'CONNOR, J., concurs in the foregoing dissenting opinion.

————

Barbara E. Reno; and Coolidge, Wall, Finlay, Johnson & Beard, L.L.C., and David M. Rickert, for relator.

Gary C. Schaengold, for respondent.